UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 12-24358-CIV-KING

JOE GORDILS, et al.

    Plaintiffs,

vs.

OCEAN DRIVE LIMOUSINES, INC., et al.

    Defendants.

_____  /

**DEFENDANTS' COURT AUTHORIZED FOURTH MOTION FOR PARTIAL SUMMARY JUDGMENT TO ESTABLISH THAT PLAINTIFFS ARE EXEMPTED FROM FLSA COVERAGE PURSUAN TO THE MOTOR CARRIER EXEMPTION**

COME NOW, Defendants, by and through their undersigned attorney, and hereby move for Partial Summary Judgment, and state:

**RELIEF REQUESTED**

Defendants seek partial summary judgment establishing that Plaintiffs are **exempted by the Motor Carrier Act ("MCA") exemption, 29 U.S.C. § 213(b)(1)**. Plaintiffs were all drivers who drove passengers in the stream of commerce as a result of "through-ticketing" arrangements that included out-of-state air and ground transportation by Defendants, including, direct arrangements with the air carriers. The evidence irrefutably establishes that in 2012, **4.73** percent of the total revenue of the Corporate Defendant came from interstate trips; in 2011, **3.06** percent; in 2010, **1.81** percent; and in 2009, **1.19** percent.

In 2012, **4.26** percent of the total trips of the Corporate Defendant were interstate trips; in 2011, **2.61** percent; in 2010, **1.70** percent; and in 2009, **1.65** percent. These percentages are only a representative sample from two major clients alone (and three in 2012). If Defendant were to include all through-ticketing clients, that percentage would substantially increase.

**MEMORANDUM OF LAW**

Summary judgment can be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. There is genuine issue of material fact only where the record as a whole could lead a rational trier of fact to find for the non-moving party. *Allan v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

**THE MOTOR CARRIER EXEMPTION**

The FLSA requires employers to pay overtime wages (1.5 times the regular hourly wage) to any employee who works more than forty hours in a week. 29 U.S.C. § 207. Exemptions are narrowly construed against the employer. *Walters v. Am. Coach Lines Of Miami, Inc.*, 575 F.3d 1221, 1227 (11th Cir. 2009). The FLSA's Motor Carrier Exemption ("MCE"), exempts from coverage, "*any employee [driver] with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 3102 of title 49.*" 29 U.S.C. § 213(b)(1).

The Secretary of Transportation has authority "to regulate the maximum hours of service of employees who are employed (1) by a common carrier by motor vehicle; (2) engaged in interstate commerce; and (3) whose activities directly affect the safety of operations of such motor vehicles." *Id*. at 1226-7; *Walters*, 1226-7; *Spires v. Ben Hill County,* 980 F.2d at 686 (11th Cir. 1993); *see also* 49 U.S.C. § 31502(b)(1); 29 C.F.R. § 782.2(a) (limiting the number of hours that a driver may drive each day).

2

**First Prong, LIMOUSINE is a Motor Carrier Regulated by the DOT**

The term "motor carrier" means any person providing motor vehicle transportation for compensation. 49 USCA § 13102 (14). LIMOUSINE transported passengers for compensation, as evidenced by all the invoices attached as exhibits in this Motion. [D.E. 161 #1]; [D.E. 132-2, 132-6, 132-12, 132-21, 132-24, 132-25, 132-26, 132-27].

**Intrastate Transportation as Part of Continuous Stream of Interstate Travel**

To fall within the Secretary of Transportation's regulatory authority, the transportation must be:

(1) between a place in-
(A) a State and a place in another State;
(B) a State and another place in the same State through another State;
* * *
(E) the United States and a place in a foreign country… 49 U.S.C. § 13501(1)(A),
(B), and (E).

When persons move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within the boundaries of one state does not make that portion of the trip any less interstate in character. *Walters,* 75 F.3d 1229. Purely intrastate transportation can constitute part of interstate commerce if it is part of a "continuous stream of interstate travel." *Id*. It must be shown that there is a practical continuity of movement between the intrastate segment and the overall interstate flow. *Id*. When drivers transport passengers making interstate journeys, they are intertwined with a continuous stream of interstate commerce. *Id*. The passengers paid one price for a pre-arranged travel package. [D.E. 161 #15-18]; [D.E. 132 ¶¶2-4, 7-53].

LIMOUSINE's records evidence prearranged "through-ticketing" packages as part of interstate travel. The passengers travelled from another state to Florida, where a Plaintiff would drive them to their local destination (e.g., from the airport to their hotel in Florida). At the

3

conclusion of their trip, the Plaintiffs would drive the passengers back to the airport (or seaport) where they returned to another state outside of Florida or country. Stmt.Undisp.Facts Nos. 15-26.

There is undisputed evidence that LIMOUSINE entered into direct arrangement, agreement or contracts with and travel agents, and the GMCVB. Stmt.Undisp.Facts Nos. 15-26. It is undisputed that the travel agents and the GMCVB made "through-ticketing arrangements" with out-of-state passengers. Such "through-ticketing arrangements" were part of a 'package deals' where the travel agent and the GMCVB booked airline flights and ground transportation by LIMOUSINE. The transportation of the passengers pursuant to the "through-ticketing" arrangements evidence that LIMOUNSINE and Plaintiffs transported such passengers while they were in the "continuous stream of interstate travel." Stmt.Undisp.Facts Nos. 15-26. [D.E. 161 #15-23]; [D.E. 132 ¶¶2-4, 7-53]. Exhibit A.

### Direct Arrangements with Airlines and Common Arrangement with Out-of-State Carrier

A '*common arrangement*' with an interstate carrier to transport passengers to airports even without a formal contract satisfies the "through-ticketing" requirement. In such event, there is continuous passage of passengers into the stream of interstate commerce. *Abel v. Shuttle Services, Inc.*, 631 F.3d 1214-5 (11th Cir. 2011); *Walters* at 1233.

In *Walters,* the court outlined that a 'through-ticketing' arrangement exists if it is shown that there is some *"common arrangement"* between the motor carrier and the out-of-state carrier, which need not be an air carrier. *Id*. at 1234. In *Abel,* the Eleventh Circuit went a step further and outlined that it is unnecessary for the motor carrier to have a direct contractual arrangement with the air carrier. Instead "through-ticketing" occurs when there is a contract with a travel agent (or other entity) which includes ground and air transportation as part of the same package, for out-of-state passengers in the stream of commerce:

4

Citing agency interpretation that the **employer need only show "a common arrangement with an out-of-state carrier"** the Court concluded that this requirement is met "even when there is no through-ticketing agreement **so long as there is evidence of a contractual connection between the motor carrier and the interstate carrier**." *Id.* at 1214-15 [Emphasis Added] [Internal Citations Omitted].

Many of Southern Shuttle's passengers to and from the airport have either just flown from, or are about to fly to, places outside the state of Florida. **A large portion of Southern Shuttle's reservations are made via travel websites on the internet. <u>Travelers buy package deals from these internet travel companies that include hotel accommodations and airfare in addition to transportation to and from the airport</u>. The internet travel companies provide their package-deal customers with a voucher for free airport transportation, which the customers use to board Southern Shuttle's airport shuttles.** Southern Shuttle then uses the collected vouchers to invoice the internet travel company for payment. In other words, Southern Shuttle's local transport of these package-deal travelers has a "practical continuity of movement" with the overall interstate journey. *Id*. at 1216-7.  (emphasis added).

The concept was also recognized by the old Fifth Circuit. *See generally Charter Limousine, Inc. v. Dade County Bd. of County Com'rs*, 678 F.2d 586, 589 (5th Cir. 1982)[1], where the Court found interstate travel when there is prearranged packaged travel including airline and limousine company:

This is not a situation where the transportation from the airport to the hotel was local haulage in the sense that the travelers' interstate journey had ended at the airport at which point he could independently contract for his transportation service to his hotel by a conveyance of his own choice. **On the contrary, the transportation of these individuals had been arranged for them and paid for in advance as an integral part of their all expense interstate journey** ...." *Id.* at 589. (Emphasis added).

In *Chao v. First Class Coach Co., Inc.*, 214 F. Supp.2d 1263, 1272 (M.D. Fla. 2001), the Court explained:

In *Southerland,* **travel arrangements had been made for tourists visiting the Virgin Islands prior to their departure from the mainland. The prearranged**

---

[1] In *Bonner v. City of Prichard, Ala*., 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

5

**travel included prepaid taxi transportation from the airport to the hotel upon arrival and back to the airport for departure.** The court concluded that under these facts the taxi transportation was an "integral part of [the tourists'] **all-expense interstate journey**." 315 F.2d at 369. The same conclusion was reached in *Charter Limousine, Inc. v. Dade County Board of County Commissioners,* 678 F.2d 586 (5th Cir.1982), **where the court held that prearranged <u>limousine service</u> provided for transportation of passengers arriving from out of state was within the stream of interstate commerce.** [Emphasis Added].

In this case, it cannot be disputed that when passengers transported by LIMOUSINE as a result of through-ticketing while they were in practical continuity of movement between the intrastate segment and the overall interstate flow. Stmt.Undisp.Facts Nos. 15-26. [D.E. 161 #15-23]; [D.E. 132 ¶¶2-4, 7-53].

The examples of when Plaintiffs drove passengers to and from airports or seaports, pursuant to a through-ticketing arrangement, continuing in the flow of interstate commerce are: 1) on May 6, 2010, SABOGAL drove a navigator SUV on behalf of Chelsea's clients; 2) on January 14, 2011, SOSA drove several passengers on a party bus to the Port of Miami, Majesty of Seas Royal Caribbean Terminal for a Overseas Travel client; 3) on January 2, 2012, RAMOS drove several passengers on a 8-passenger SUV which arrived from Sao Paolo Brazil for a Overseas Travel client; 4) on February 7, 2012, RAMOS drove several passengers on the F65, Hummer Killer, which arrived from Sao Paolo Brazil for a Overseas Travel client; 4) on May 27, 2011, GORDILS drove several passengers on an 8-passenger SUV to Miami International Airport for a Overseas Travel client; 5) on January 19, 2010, SABOGAL picked up passengers on a limousine (which seats 10) from Miami International Airport for a Overseas Travel client; 6) on September 10, 2012, Francisco Ramos drove several passengers on a motor coach to Miami International Airport for a departure on Swiss Air; 7) on September 20, 2012, MORALES drove several passengers (PRUHEALTH) on a 30-person F650, Hummer Killer, which arrived at Miami International Airport from London, for an Overseas Travel client; and 8) on September

24, 2012, MORALES drove the same passengers on a Van (up to 15 passengers) to Miami International Airport and for departure for London, for an Overseas Travel client. Stmt.Undisp.Facts Nos. 4-14. [D.E. 161 #4]; [D.E. 132 ¶54].

### **Second Prong, LIMOUSINE is Engaged In Interstate Commerce Transportation**

The FLSA's overtime requirements "shall not apply with respect to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b). The Secretary of Transportation is deemed to have such power if two requirements are met: the employee "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a). "[T]he Secretary of Transportation need not actually exercise his power to regulate under the Motor Carrier Act; an exemption under section 13(b)(1) is created so long as the Secretary has the authority to regulate over a particular category of employees." *Spires v. Ben Hill County*, 980 F.2d 683, 686 (11th Cir.1993).

The prong as to whether an employer is a motor carrier under the jurisdiction of the Secretary of Transportation *is always satisfied* where the Secretary has exercised jurisdiction over the employer. *Walters,* supra at 1227; *Mena v. McArthur Dairy, LLC*, 352 Fed. Appx. 303, 306 (11th Cir. 2009).

The Secretary of Transportation need not actually regulate the driver or his employer; the exemption applies whenever the Secretary has the *authority* to regulate a driver's hours and safety. *Abel,* at 1212 (11th Cir. 2011); *Walters,* supra at 1226; *Mena,* supra; *Vidinliev v. Carey Intern., Inc.*, 581 F. Supp.2d 1281, 1292 (N.D. Ga. 2008).

7

In *Morris v. McComb*, 332 U.S. 422, 432 (1947), the court held that when the employer's interstate trips are 3.65% of its overall trips, the Secretary of Transportation has jurisdiction. In *Walters,* supra at 1228, the court noted that the overall case law "suggests" that interstate trips are ***de minimus* if they are less than 1%** of the total business of the employer. The *Walters* court also held that "In analyzing the *de minimus* question, we find it pertinent to consider both the number of interstate trips made **and** the percentage of revenue the company earned from those trips. *Id.* Thus, it follows that if the percentage of interstate trips *or* gross revenues derived from interstate trips are in excess of 1% the Secretary of Transportation has jurisdiction.

LIMOUSINE has irrefutably demonstrated that the percentage of their business resulting from interstate business is far more than 1 percent. The evidence establishes that in 2012, **4.73** percent of the total revenue of the Corporate Defendant came from interstate trips; in 2011, **3.06** percent; in 2010, **1.81** percent; and in 2009, **1.19** percent. Exhibit A ¶¶40-43. In 2012, **4.26** percent of the total trips of the Corporate Defendant were interstate trips; in 2011, **2.61** percent; in 2010, **1.70** percent; and in 2009, **1.65** percent.

The Court should not that only two major clients were used to calculate these figures between 2009 and 2011. In 2012, three clients were used to calculate the figures almost doubled from **1.65** percent in 2009 to **4.73** percent in 2012. These percentages are therefore only a representative sample of some of the interstate transportation. If LIMOUSINE were to include all through-ticketing clients and interstate transportation, that percentage would substantially increase.

Based on the foregoing calculations, Defendants always had more than the percentage of interstate trips that were present in *Morris*. Due to the high volume, GMCVB and Overseas are used as representative samples. These calculations do not take into account all of the interstate

8

trips that Defendants drove. They are solely meant to be illustrative of Defendants transporting more than a *de minimus* amount of interstate trips.

Mrs. Bennetti identified **twenty-three companies in her deposition which were airlines, including, Vista Execujet, Virgin Atlantic Airways, Trinity Air Ambulance, Treasure Air Charters, Sun West Aviation, Stohl Air Travel, Star Base Aviation, Sky Quest LLC, Partner Execujet, Inc., Owen Gareth, Aircraft Tail HBJGH, Newport Jets, Messenger Aviation, Liberty Execujet, Key Air, International Execujet Club, Harrah's Aviation, Fairwinds Air Charter, Eagle Aircraft and Transportation, Corporate Air, Chelsea Aviation, Banyan Air and American Execujet Charter.** The percentage of interstate trips is higher if all of the airline companies were included. [D.E. 161 #21, 23]. The transportation of passengers in the stream of commerce was not *de minimus*.

GMCVB has given two Affidavits stating that it is a governmental organization that promotes and attracts individuals to visit Greater Miami in order to promote business which benefits the Greater Miami area. The representatives from GMCVB also gave their depositions which were consistent with their affidavits. Stmt.Undisp.Facts Nos. 22-25. GMCVB makes the travel arrangements for those clients which are outside the State of Florida. GMCVB coordinates the flight arrangements with air carriers as well as the ground transportation with LIMOUSINE in Miami. All the transportations were in the stream of commerce. [D.E. 161 #1].

Overseas Travel has also given an Affidavit stating that it is a private company, promotes "flight travel, ground transportation and hotel stays as a package deal" and the customer pays a single price for the transaction. Their representative has also given his deposition which was consistent with his affidavit. Stmt.Undisp.Facts Nos. 19-21. Overseas is responsible for purchasing the flight travel and ground transportation. LIMOUSINE was contracted by Overseas

9

to provide that local transportation as part of one through-ticketing arrangement. [D.E. 161 #18]. LIMOUSINE provided transportation for Overseas travel customers in the stream of commerce. Stmt.Undisp.Facts Nos. 19-21.

LIMOUSINE's records demonstrate that it is regulated by the DOT. [D.E. 161 #2, 3]. It also has demonstrated that it is subject to the jurisdiction of the DOT because the bulk of the transportation as a result of pre-arranged contracts with the airlines, as well as travel agents and the GMCVB and Overseas. [D.E. 161 #15-23]; [D.E. 132 ¶¶2-4, 7-53]. LIMOUSINE transported customers in the stream of commerce. *Id.*

### **Plaintiffs' Work Affected Safety of Operation**

The work of an employee who is a full-duty or partial duty 'driver,' directly affects 'safety of operation' within the meaning of section of the Motor Carrier Act whenever he drives a motor vehicle in interstate or foreign commerce within the meaning of the Act. *Alvarado v. I.G.W.T. Delivery Sys., Inc.*, 410 F. Supp.2d 1272, 1277-78 (S.D. Fla. 2006); see also 29 C.F.R. § 782.3(b) (citing *Levinson v. Spector Motor Service,* 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947).

There is no dispute that Plaintiffs were full time drivers. They claim that they worked between 72 and 80 hours a week for Defendants.

It is not necessary to establish the percentage of interstate trips. In *Walters, supra*, the court held that employees meet this prong of the exemption, *if they could reasonably be expected to drive in interstate commerce. Id.* at 1235. There is no dispute that all the Plaintiffs could be reasonably expected to transport the passengers which were in their interstate journey. Stmt.Undisp.Facts Nos. 4-14.

## The Vehicles Driven by Plaintiffs are Covered by the Exemption

The Southern District of Florida, in *Bedoya v. Aventura Limousine & Transp. Serv., Inc.,* 2012 WL 3962935 (S.D. Fla. 2012), explained the Motor Carrier applies to vehicles that weight more than 10,001 pounds or more, **or** fits eight or more passengers:

> Enacted in August 2005, the SAFETEA–LU[2] modified the definition of "motor carrier" from "a person providing motor vehicle transportation," 49 U.S.C. § 13102(12), to "a person providing *commercial* motor vehicle transportation (as defined in [49 U.S.C .] section 31132)," 49 U.S.C. § 13102(14) (2005) (emphasis added). A "commercial motor vehicle" is defined as a motor vehicle that weighs at least 10,001 pounds *or* one that is designed or used to transport more than 8 passengers (including the driver) for compensation. *See* 49 U.S.C. § 31132(1)(A)(B) (2006).[2]
>
> Thus, beginning in 2005, a motor carrier was exempt from having to pay its employees overtime *only if* the vehicles the motor carrier owned: "(1) traveled ... in interstate commerce; and (2) weighed over 10,001 pounds **[or]** were designed to transport more than 8 passengers including the driver...." *Fox v. Commonwealth Worldwide Chauffeured Transp. of N.Y., LLC,* ––F.Supp.2d –– –, No. 08–CV–1686 (NGG)(RML), 2012 WL 1078230, at *5 (E .D.N.Y. Mar. 30, 2012) (footnote call number omitted). This represented a fairly significant change, as "employees of motor carriers ... historically ha[d] not been entitled to overtime compensation." *Hernandez v. Alpine Logistics, LLC,* No. 08–CV–6254T, 2011 WL 3800031, at *3 (W.D.N.Y. Aug.29, 2011). Congress's handiwork to the Motor Carrier Act exemption did not end with the SAFETEA–LU. [Bold Emphasis Added]. *See also Cerutti v. Frito Lay, Inc.*, 777 F. Supp. 2d 920, 930, 938 (W.D. Pa. 2011) (after August 2008, the Secretary of Transportation regained authority to exercise jurisdiction over the qualification of maximum hours for drivers of such vehicles, thus exempting employees who drove such vehicles from FLSA coverage).

Plaintiffs have admitted in deposition and interrogatories that they drove vehicles which seated more than ten passengers. Stmt.Undisp.Facts Nos. 4-14. [D.E. 161 #4-9]. Through discovery, Defendants have made the vehicles available for inspection to the Defendants. The vehicles contain a *vehicle specification tag* (located on the jamb of the driver side door). The *vehicle specification tag* specifies the weight vehicle, and in certain cases, the number of

---

[2] The acronym stands for "Safe, Accountable, Flexible, Efficient Transportation Equity Act."

11

passengers that may be safely seated. Stmt.Undisp.Facts Nos. 2-3. All of the Plaintiffs admitted to driving vehicles that either weighed more than 10,001 pounds or that seated more than 8 passengers. Stmt.Undisp.Facts Nos. 4-9.

WHEREFORE, Defendants request that the Court enter partial summary judgment, establishing that Plaintiffs are not entitled to recover overtime wages by virtue of the motor carrier exemption, 29 U.S.C. § 213(b)(1), together with any and all other relief as the court deems must and adequate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via transmission of Notices of Electronic Filing generated by CM/ECF, to J.H. Zidell, Esq. of J.H. Zidell, P.A., 300 71st Street, Suite 605, Miami Beach, Florida 33141, on this 19th day of February, 2015.

THE LAW OFFICES OF
EDDY O. MARBAN
1600 Ponce De Leon Boulevard, Suite 902
Coral Gables, Florida 33134
Telephone (305) 448-9292
Facsimile (305) 448-9477
E-mail: marbanlaw@gmail.com

By: *s/Edilberto O. Marban*
    EDDY O. MARBAN, ESQ.
    Fl. Bar No. 435960