UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24358-cv-KING

JOE GORDILS, FRANCISCO RAMOS,
BEYMAR SABOGAL, RIDER
MORALES, and PEDRO P. SOSA,

    Plaintiffs,

vs.

OCEAN DRIVE LIMOUSINES, INC.,
OCEAN DRIVE LIMOUSINES, INC.
SO. FLA., RICHARD BENETTI, and
MELISSA BENETTI, individually,

    Defendants.
_____/

## ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon cross-motions for summary judgment: Plaintiffs' Second Renewed Motion for Partial Summary Judgment (DE 210) and Defendants' Fourth Motion for Partial Summary Judgment (DE 216). This action arises under the Fair Labor Standards Act and the Florida Minimum Wage Amendment. Plaintiffs worked as drivers for Defendants' transportation services company, Ocean Drive Limousines. They seek to recover unpaid wages. The Court has already considered multiple motions for summary judgment by both parties. On October 14, 2014, the Court reopened discovery to allow the parties one last opportunity to brief the applicability of the Motor Carrier Act exemption. Both parties filed motions for summary judgment. For the reasons that follow, both motions are denied.

## I. Standard on Motion for Summary Judgment

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it is may determine the outcome under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must show specific facts to support that there is a genuine dispute. *Id.* at 256. On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *Id.* at 255. In reviewing the record evidence, the Court may not undertake the jury's function of weighing the evidence or undertaking credibility determinations. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010).

## II. Applicability of The FLSA's Motor Carrier Act Exemption

The FLSA exempts from the maximum hour requirements "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). This provision is known as the Motor Carrier Act exemption:

> Section 31502 of Title 49 authorizes the Secretary of Transportation to "prescribe requirements for ... qualifications and maximum hours of service of employees of" a motor carrier or a private motor carrier. 49 U.S.C. § 31502(b)(1)-(2). Section 31502(a)(1) of Title 49 explicitly states that this provision in § 31502(b) applies to "transportation ... described in" 49 U.S.C. § 13501. *Id.* § 31502(a)(1). In turn, § 13501 of Title 49 confers jurisdiction on the Secretary of Transportation over transportation by a motor carrier "on a public highway," to the extent passengers, property, or both are transported by motor carrier "between a place in ... a State and a place in another State" or "a

>State and another place in the same State through another State." *Id.* § 13501(1)-(2).

*Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210, 1213 (11th Cir. 2011). "There are two requirements for an employee to be subject to the motor carrier exemption": (1) "his employer's business must be subject to the Secretary of Transportation's jurisdiction under the MCA"; and (2) "the employee's business-related activities must 'directly affect[] the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.'" *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1227 (11th Cir. 2009) (alteration in original) (quoting *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 182 (11th Cir. 1991)).

### A. The Secretary of Transportation's Jurisdiction over Defendants

For the first prong of the Motor Carrier Act exemption to be met, Defendants must be subject to the Secretary of Transportation's jurisdiction under the MCA. There is no genuine dispute that Ocean Drive Limousines is a "motor carrier," which is defined as "a person[1] providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14).[2]

The parties' dispute focuses on whether Defendants transport passengers in interstate commerce sufficient to invoke the Secretary's jurisdiction under 49 U.S.C. § 13501. It is not genuinely disputed that Defendants have many clients, including third-party travel agencies and destination-management companies. One such client is the Greater Miami Convention

---

[1] "Person" in this context includes the same meaning as found in Section 1, Title 1, United States Code. *See* 49 U.S.C. § 13102(18).

[2] 49 U.S.C. § 31501(2) provides that "motor carrier" as used in in 49 U.S.C. Subt. VI, Pt. B, Ch. 315, has the same meaning as in Section 13102 of Title 49.

3

and Visitors Bureau ("GMCVB"). GMCVB arranges travel for individuals from outside of Florida to and from Miami, and also arranges their ground transportation through Ocean Drive Limousines and other companies. *Id.* Both the ground transportation with Defendants and the air travel are arranged by GMCVB as part of a package deal for its clients. *Id.* at 2. Defendants have provided ample record evidence, which Plaintiffs do not genuinely dispute, to demonstrate Defendants' substantial participation in such arrangements with GMCVB. *See* DE 218-6—DE 218-14.

The Eleventh Circuit has found these very types of arrangements sufficient to bring an employer within the Secretary of Transportation's jurisdiction. *See Abel*, 631 F. 3d at 1216–17 (finding that the purely intrastate transport of passengers to and from an airport constitutes interstate commerce where a large portion of a transportation services company's reservations were made as part of package deals from internet travel companies that include hotel accommodations and airfare in addition to transportation to and from the airport). Here, the undisputed facts show that Defendants substantially participate in arrangements whereby third parties coordinate air travel and ground transportation as part of one service offered to its clients. Under *Abel*, Defendants transport passengers in interstate commerce sufficient to invoke the Secretary's jurisdiction under the Motor Carrier Act.

### B. The Secretary's Jurisdiction over Plaintiffs' Work-Related Activities

For the second prong of the Motor Carrier Act exemption to be met, the Secretary of Transportation must have jurisdiction over Plaintiffs' work-related activities. The parties' cross-motions must be denied upon this prong, for two reasons: First, genuinely disputed issues of material fact remain as to whether Plaintiffs' involvement in interstate commerce

was more than *de minimis*. Second, unresolved factual issues preclude the Court's determination of the applicability of an exception to the Motor Carrier Act exemption under the Technical Corrections Act of 2008.

### 1. Plaintiffs' Involvement in Interstate Commerce

If an employee's duties "'directly affect[] the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act,'"[3] the exemption nevertheless assumes that the employee performs his duties "either regularly or from time to time." 29 C.F.R. § 782.2(b)(3).

> Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting "safety of operation." **On the other hand**, where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to him in any workweek so long as there is no change in his duties.

*Id.* (emphasis added). These regulations accord with the Eleventh Circuit's practice of assuming, without deciding, that there is a requirement of more-than-*de-minimis* interstate activity in order to satisfy the *first* prong of the Motor Carrier Act exemption. *See Walters*, 575 F.3d at 1228 ("Assuming arguendo that there is such a [*de minimis*] requirement"); *Abel*, 631 F.3d at 1213, n.4 (same).

Under these standards, the Court finds genuinely disputed issues of material fact as to whether Plaintiffs' involvement in interstate commerce was more than *de minimis*. For all of

---

[3] *Walters*, 575 F.3d at 1227 (alteration in original) (quoting *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 182 (11th Cir. 1991)).

the undisputed evidence that Defendants have submitted to demonstrate their interstate activity, Defendants tie precious little of it to Plaintiffs. The undisputed facts show, at most, that each Plaintiff made one, two, or three trips to or from an airport or seaport through the kind of third-party arrangement described above. *See* DE 217, at 7 ¶ 21, 8 ¶ 25. Beyond that, Plaintiff Ramos twice made interstate trips (DE 161-7, at 5); and Plaintiff Sosa drove to various airports five times in February 2010—but not, so far as the record shows, in connection with third-party arrangements (DE 161-8, at 6–12). Ramos testified that, as part of his job duties, he could be expected to drive to the airport or to the Port of Miami at any time (DE 161-7, at 5), but the record does not show to what extent he could be expected to do so in connection with third-party arrangements. Plaintiffs Gordils, Sabogal, and Rider all testified that they drove to the airport or the Port of Miami occasionally, at a "minimum," or "sometimes" and "not too often." Given this minimal showing of interstate travel tied to Plaintiffs, there remain genuine issues of material fact as to whether Plaintiffs' involvement in interstate commerce was more than *de minimis*, sufficient to satisfy prong two of the Motor Carrier Act exemption.

### 2. **An Exception to the Exemption—the Technical Corrections Act**

Regardless of the Motor Carrier Act exemption, Plaintiffs would be entitled to overtime compensation if they "in part" drove vehicles that weighed 10,000 pounds or less and were designed or used to transport eight or less passengers (including the driver). On June 6, 2008, Congress passed the SAFETEA-LU Technical Corrections Act of 2008, Pub. L. 110–244, 122 Stat. 1572. The Technical Corrections Act restored the previous definition

6

of "motor carrier" to "a person providing motor vehicle transportation [for compensation]";[4] and provided an exception to the Motor Carrier Act exemption for "covered" employees. In other words, "'covered employees' are entitled to overtime." *McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 170 (3d Cir. 2015). A "covered employee" under the Technical Corrections Act includes "an individual—"

> (1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code . . . ;
> (2) whose work, **in whole or in part**, is defined—
>   (A) as that of a driver . . . ; and
>   (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles—
>     (i) designed or used to transport more than 8 passengers (including the driver) for compensation; [and]
>   . . .
> (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

Pub. L. 110–244, 122 Stat. 1572 (emphasis added). The upshot is that if Plaintiffs "in part" drove vehicles that weighed 10,000 pounds or less and were designed or used to transport eight or less passengers (including the driver), then they are entitled to overtime under the FLSA, despite the Motor Carrier Act exemption. *See Bedoya*, 2012 WL 3962935, at *3.[5]

It is undisputed that "Plaintiffs drove several types of vehicles, and could be called to drive any vehicle in the fleet." DE 217, at 2 ¶ 4. These included "a Lincoln Navigator SUV which seats a maximum of seven passengers plus 1 driver." *Id.* Additionally, Defendants

---

[4] Previously Congress had modified the definition of "motor carrier" from "a person providing motor vehicle transportation" to "a person providing *commercial* motor vehicle transportation." The 2008 Technical Corrections Act restored the original, broader definition. *See Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, No. 11-cv-24432, 2012 WL 3962935, at *3–4 (Sept. 11, 2012) (Altonaga, J.).

[5] Defendants woefully misrepresent the *Bedoya* case, citing it for a proposition that, in the very next section, the *Bedoya* court explains was amended by a later version of the Technical Corrections Act. *See supra* note 4.

state, without genuine dispute, that Ramos, Sosa, Gordils, Sabogal, and Morales, each drove eight-passenger SUV's, or SUV's or other vehicles that had the capacity for "eight or more" passengers. DE 217, at 7 ¶ 21 (emphasis added). *See also id.* at 2–5 ¶¶ 4–14.

Absent from the record are facts material to the resolution of whether the Technical Corrections Act of 2008 excepts Plaintiffs from the Motor Carrier Act exemption. Those facts include how much the eight-passenger vehicles driven by Plaintiffs weighed; whether some of the "eight-passenger" figures recited by Defendants include the driver; and how often the Plaintiffs drove each type of vehicle as part of their regular job duties. The undisputed facts are sufficient to make a showing, but issufficient to establish as a matter of law, that Plaintiffs "in part" drove vehicles that weighed 10,000 pounds or less and were designed or used to transport eight or less passengers (including the driver).

### III. Conclusion

Therefore, it is **ORDERED, ADJUDGED, and DECREED**:

1. Plaintiffs' Second Renewed Motion for Partial Summary Judgment **(DE 210)** be, and the same is, hereby **DENIED**.

2. Defendants' Fourth Motion for Partial Summary Judgment **(DE 216)** be, and the same is, hereby **DENIED**.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 21st day of April, 2015.

JAMES LAWRENCE KING,
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc: All Counsel of Record